DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants Mark and Christina Scaffidi appeal the decision of the Medina County Court of Common Pleas, which granted summary judgment to appellee Commercial Union Insurance Company on appellants' request for a declaratory judgment and their claims of breach of contract, fraud, waiver, and estoppel. We affirm in part, reverse in part, and remand.
 I.
Mark and Christina had rented a house at 115 South Pardee, in Wadsworth ("the Pardee property") for a number of years, under a month-to-month lease. Prior to November 1994 they advised their landlady Violet Rothemund that they would terminate the lease at the end of November. They were in the process of purchasing a home at 754 Mt. Eaton Road in Wadsworth ("the Mt. Eaton property"). On November 11, they secured a Commercial Union Insurance Company ("CUIC") homeowners insurance policy on the Mt. Eaton property, with an effective date of November 17. Prior to December 1, the Scaffidis and their children moved into the Mt. Eaton property. However, they asked Mrs. Rothemund if they could keep their belongings at the Pardee property for a few extra days, until they could arrange to move them. She gave them permission to do so. The Scaffidis drained a waterbed at the Pardee property, but neglected to unplug the heating unit. On December 1 the unit overheated and caused a fire. The Scaffidis lost most of their personal property, and damage to the house exceeded $36,000. The Scaffidis reported the fire to their insurance agent, who in turn filed a claim on the loss under the homeowners policy. The Scaffidis never had tenants insurance on the Pardee property.
CUIC initially processed the claim, and paid the Scaffidis for their personal property loss. CUIC also began negotiations with Cincinnati Insurance Company, Mrs. Rothemund's insurer, to settle the claim on the premises damage. Some eight months after the fire, a CUIC claim adjuster realized that the homeowners insurance policy was written on the Mt. Eaton property, and that the Mt. Eaton property was not the damaged property.[1] The homeowners policy contains several exclusions which apply to liability arising from the rental of real property. On September 15, 1995, a CUIC claim adjuster wrote to the Scaffidis to inform them that the policy excluded personal liability coverage for property damage "[a]rising out of the rental * * * of any part of any premises by an `insured[.]'" CUIC did not mention any of the exceptions to this exclusion which, if applicable, would permit coverage. CUIC thus advised the Scaffidis that there was no coverage for the claim nor was there any duty by CUIC to defend them against any claims based on their liability.
After negotiations broke down between CUIC and Cincinnati Insurance Company, the latter filed suit along with, and in subrogation to the rights of, Mrs. Rothemund, against the Scaffidis. The complaint, filed on February 21, 1996, alleged that the Scaffidis were negligent in draining the waterbed. At the time this appeal was filed, this suit had not yet been resolved. After the Rothemund suit was filed, CUIC initially assigned counsel to represent the Scaffidis against the suit. However, CUIC soon instructed the assigned counsel to withdraw, advising him that there was no coverage and no duty to defend. The Scaffidis then filed suit against CUIC, asserting breach of contract, fraud, waiver, and estoppel, and seeking a declaratory judgment, pursuant to R.C. 2721.01 et seq. and Civ.R. 57. They sought compensatory damages, attorney fees, and punitive damages. CUIC filed for summary judgment, and the Scaffidis sought partial summary judgment on the issues of coverage, duty to defend, waiver, and estoppel. The trial court granted summary judgment to CUIC, and the Scaffidis filed the instant appeal.
 II. ASSIGNMENT OF ERROR NUMBER 1 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO COMMERCIAL UNION [INSURANCE] COMPANY.[2]
To prevail on a summary judgment motion, the moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." (Emphasis sic.) Dresher v. Burt (1996),75 Ohio St.3d 280, 292. To accomplish this, the movant must be able to point out to the trial court "evidentiary materials [that] show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Id.
at 293. If such evidence is produced, the non-moving party must proffer evidence that some issue of material fact remains for the trial court to resolve. Id.
An appellate court reviews an award of summary judgment denovo and, like the trial court, must view the facts in the case in the light most favorable to the non-moving party. BeaverExcavating Co. v. United States Fid. Guar. Co. (1998), 126 Ohio App.3d 9,13-14. Any doubt must be resolved in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7,12.
 A.
As a preliminary matter, we note that the Scaffidis' Count Two of their amended complaint included claims that CUIC's refusal to defend and to indemnify was unjustified and made with actual malice, fraud and insult. However, Count Two also claims that the insurance policy which CUIC produced in discovery and which formed the basis for the trial court's decision was a "false certified copy[.]" The trial court, in granting CUIC summary judgment on all claims must necessarily have found that the Scaffidis did not carry their burden of production of evidence that there was a genuine issue of material fact on this issue. Dresher,75 Ohio St.3d at 293. We affirm the trial court's grant of summary judgment to CUIC on this issue, for the following reasons.
Prior to filing their original complaint, the Scaffidis asked CUIC for a certified copy of the insurance policy. CUIC admitted that it could not produce a certified copy, but submitted a copy of a homeowners policy which they believed represented the policy which the Scaffidis had purchased. Prior to filing their amended complaint, the Scaffidis again requested a certified copy of the policy, and CUIC acknowledged that it did not have and could not construct the certified copy. However, within days of this admission, CUIC sent the Scaffidis a certified copy of the policy. The Scaffidis challenged the authenticity of this document and alleged that it was fraudulent. On summary judgment, CUIC pointed to the record to show that there was no evidence that the document was not authentic. The Scaffidis' sole support for their claim of fraud is the suspicious nature of the "disappearance" and "reappearance" of the policy. Counsel for CUIC, in an affidavit, explained that the failure to produce the policy after the second request was the product of miscommunication between CUIC and its counsel as to the existence and location of the policy. In its motion for summary judgment, CUIC pointed to the record to demonstrate that there was no genuine issue of material fact as to this claim. The Scaffidis then had the burden of producing evidence which would demonstrate that there was a genuine issue of material fact regarding this claim. They did not carry this burden. In fact, Christina Scaffidi, in her deposition testimony, acknowledged "I bet I have [a copy of the policy] at home." Viewing the facts in the light most favorable to the Scaffidis, we find that the trial court appropriately granted summary judgment to CUIC, because there was no genuine issue of material fact, CUIC was entitled to judgment as a matter of law, and reasonable minds could come to but one conclusion, that in favor of CUIC.
 B.
"Because an insurance policy is a written contract, we look to its terms to determine the intention of the parties concerning coverage. In so doing, the court must give the words in the policy their plain and ordinary meaning." Minor v. Allstate Ins.Co., Inc. (1996), 111 Ohio App.3d 16, 20, citing State Farm AutoIns. Co. v. Rose (1991), 61 Ohio St.3d 528, overruled on other grounds, Savoie v. Grange Mut. Ins. Co. (1993) 67 Ohio St.3d 500, paragraph one of the syllabus. If the insurance contract is "clear and unambiguous" its interpretation is a question of law.Beaver, 126 Ohio App.3d at 14, citing Leber v. Smith (1994),70 Ohio St.3d 548, 553, certiorari denied (1995), 514 U.S. 1111,131 L.Ed.2d 855. If the provisions of the contract are susceptible of more than one interpretation, the provisions "will be construed strictly against the insurer and liberally in favor of the insured." Beaver, 126 Ohio App.3d at 14, citing King v.Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, syllabus.
The homeowners policy in question here affords the insured coverage for personal liability. Where the liability relates to the rental of premises by the insured, there are three listed exclusions to that coverage. At the trial court the parties disputed whether the Scaffidis were renting the Pardee property on the day of the fire. It was undisputed that they had paid rent only through November 30 and did not pay rent for the extra time when their landlady permitted them to leave their belongings in the house. The insurance contract itself does not define the term "rental." CUIC urged the trial court and this Court to find that the Scaffidis were renting the Pardee house, and that therefore the damages fall outside the homeowners policy. It is not disputed that if the Scaffidis were not renting, there would be coverage for the damages.[3]
We find that regardless of whether or not the Scaffidis were renting the Pardee property on the day of the fire, they were entitled to coverage for the property damage, for the following reasons.
Assuming, without deciding, that the Scaffidis were renting the Pardee property, there would be coverage under the policy because such rental would fall within an exception to each of the rental-related exclusions. For each rental-related exclusion in the policy, there are exceptions which would permit coverage despite the exclusion. Throughout the course of this litigation, CUIC has focused on one rental exclusion. We will deal with all three exclusions which may be applicable to the instant case.
The first such exclusion reads:
 1. Coverage E — Personal Liability [does] not apply to * * * "property damage":
* * *
 c. Arising out of the rental or holding for rental of any part of any premises by an "insured". This exclusion does not apply to the rental or holding for rental of an "insured location":
(1) On an occasional basis if used only as a residence;
 (2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or
 (3) In part, as an office, school, studio or private garage[.]
(Emphasis sic.) The policy lists eight separate premise descriptions, each of which constitutes an "insured location" under the policy. Those pertinent to the instant case are:
4. d. any part of a premises:
(1) Not owned by and "insured"; and
 (2) Where an "insured" is temporarily residing; * * * or
 h. Any part of a premises occasionally rented to an "insured" for other than "business" use.
(Emphasis sic.) The policy defines "insured" as the named insureds and their relatives who reside with them. The policy does not define "temporarily," "occasionally," or "occasional." We will apply their plain and ordinary meaning. Webster's Third New International Dictionary (1993) 2353 defines "temporarily" as "for a brief period: during a limited time[.]" Webster's defines "occasionally" as "on a particular occasion[,]" "now and then: here and there[.]" Webster's defines "occasional" as "occurring irregularly: * * * infrequent[.]" Id. at 1560.
CUIC has argued that although the Scaffidis did not actually reside at the premises after November 30, they could have and therefore they should be considered to be renters. Applying the above policy provisions to such a construction of the facts of the instant case, it is clear that the damaged house was an "insured location" as defined in the policy. Either the purported rental was for the Scaffidis' temporary residence or it constituted an occasional rental for other than business use. The Scaffidis continued use of the Pardee property beyond their lease term to store their personal belongings and, as CUIC contends, for possible residence therein, could fall within the exception (2) to the exclusion recited above "[i]n part for use only as a residence[.]"
CUIC argues that because the Scaffidis had resided at the rental property for a number of years prior to the fire, their use of the property cannot be considered "temporary" or "occasional." We disagree. Their lease had terminated on November 30. Even assuming that the arrangement for continued use of the residence was a continuation of the rental agreement, it was clearly a temporary arrangement, to last no more than a few days, to meet their need for storage which occurred or operated "on a particular occasion[.]"
The next exclusion applicable to a rental situation reads:
1.e. Arising out of a premises:
(1) Owned by an "insured";
(2) Rented to an "insured"; or
 (3) Rented to others by an "insured"; that is not an "insured location[.]"
(Emphasis sic.) Under the facts of this case, and assuming that the Scaffidis were renting the Pardee premises, we have already determined that the premises constituted an "insured location" by the definitions contained in the policy. Thus, this exclusion does not apply.
The third exclusion reads:
2. Coverage E — Personal Liability, does not apply to:
* * *
 "Property damage" to property rented to, occupied or used by or in the care of the "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion.
(Emphasis sic.) Whether the Pardee property was being rented to, or merely being used by, the Scaffidis on the day of the fire, this exclusion cannot apply because the damage to the premises was caused by fire.
Neither the exclusions relating to rental premises nor the exclusion for premises "used by or in the care of the `insured'" can be applied to exclude coverage for the damage to the Pardee property. Therefore, we find that the Scaffidis were entitled to an indemnification under the provisions of this policy as a matter of law. Because an insurer is obliged to defend against claims which do, or arguably could, fall within the coverage of the policy, we find that the Scaffidis were also entitled to a defense against this claim. See Sanderson v. Ohio Edison Co. (1994),69 Ohio St.3d 582, paragraph one of the syllabus.
 C.
We affirm the grant of summary judgment to CUIC on the claim of fraud in submitting the certified copy of the insurance policy. Because we find that the Scaffidis were entitled to a defense and indemnity under the policy, we reverse the judgment of the trial court on the claim of breach of contract. We remand this cause for a determination of the amount of legal costs to be reimbursed. Having found that there was coverage under the policy, we find that the Scaffidis' claims of waiver and estoppel are moot.
The trial court granted CUIC summary judgment on all the claims, which included claims that CUIC's refusal to defend and to indemnify under the contract involved fraud, bad faith and actual malice. The trial court found that there was no duty to defend or to indemnify, effectively rendering these claims moot. We reverse the trial court's grant of summary judgment on the issues of fraud, actual malice and bad faith in CUIC's refusal to defend and indemnify, and we remand for a determination on these issues consistent with this decision.
Judgment affirmed in part, reversed in part, and causeremanded.
 KK The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
WILLIAM R. BAIRD, FOR THE COURT
CARR, J. and BATCHELDER, J. CONCUR
[1] There also may have been an initial misunderstanding by CUIC employees that the policy was a tenants policy which covered the Pardee property.
[2] The Scaffidis also assign as error that the trial court did not grant them partial summary judgment on their claims of breach of contract and waiver and estoppel. However, the issues implicated in this second assignment of error are addressed here.
[3] In fact, under a policy exclusion for personal liability listed in "Section II — Exclusions" marked "2.c." any damage to "property * * * used by or in the care of the `insured'" can be excluded; however, there is an exception to the exclusion for damage caused by fire. See further discussion, infra.